Z. George SHAW et al., Appellants,

v.

MASSACHUSETTS BONDING & INSURANCE CO., Appellee.

No. 16258.

Court of Civil Appeals of Texas.

Dallas.

Dec. 6, 1963.

---

Wm. Andress, Jr., Dallas, for appellants.

Brundidge, Fountain, Elliott & Churchill and Roger A. Hansen, Dallas, for appellee.

WILLIAMS, Justice.

Appellee, Massachusetts Bonding & Insurance Company (now known as Hanover Insurance Company) brought this suit against Z. George Shaw and wife, Ona Daly Shaw, d/b/a Texona Decorating Company, and Willie L. Barnett, trading as Bill Barnett & Associates, as indemnitors, for loss on a performance bond. Appellee based its suit upon an application for bond executed by Shaw and his wife as co-partner, and Barnett, which provided for indemnification of the surety company in the event of loss. Appellee alleged that it had paid out certain amounts, evidenced by vouchers or drafts, for materials and services furnished to the principal on the bond prior to date of default. Appellee not obtaining service on Willie L. Barnett, dismissed him from the case. The suit was tried to a jury and resulted in a judgment for appellee. Shaw and wife appeal, complaining primarily concerning the admissibility of certain testimony and also that the verdict of the jury is not supported by any evidence or, in the alternative, insufficient evidence.

By their first three points, grouped together, appellants complain of the action of the trial court in admitting into evidence a letter, designated Exhibit 2, and containing admissions of the correctness of certain accounts paid by the surety company on the loss in question. The admissions were signed by "Sarah Daniels, Attorney for Ona Daly Shaw". Appellants contend that such a letter was inadmissible because (1) same was inadmissible against Z. George Shaw; (2) there was no showing of authority of Sarah Daniels to sign the

admission; and (3) that such confirmation of the correctness of the accounts was really a part and parcel of a compromise and settlement negotiation and therefore same was inadmissible, and the court should have submitted an appropriate issue inquiring as to whether it was a part of a compromise and settlement agreement. We think the exhibit was properly received by the court. The facts and circumstances surrounding the introduction of this evidence are as follows: The surety company's pleadings alleged, *inter alia*, that "defendants, by said application, agreed to indemnify and hold plaintiff harmless of and from all loss, costs and expenses, including attorneys fees, which plaintiff might sustain in consequence of the execution of said bond, and agreed that the vouchers issued by plaintiff in discharge of any obligation shall be conclusive evidence of the fact and extent of liability of the surety." The application for the bond, made the basis of this suit, provided in Paragraph XIV: "The vouchers or other evidence of any payment made in good faith by the company arising out of or in connection with the bond or bonds herein applied for shall be taken as conclusive evidence * * * of the fact and extent of liability of undersigned to the company." At the end of the application the printed form provided: "If co-partnership, sign here:", followed by "Texona Decorating Company, Bill Barnett & Associates, Ona Daly Shaw (individually and as co-partner), Z. George Shaw (individually and as co-partner), and Willie L. Barnett (individually and as co-partner)."

The records reveal that Ona Daly Shaw was represented by Sarah Daniels and Bill Andress, as attorneys, during the period in question and that Sarah Daniels had several telephone conversations with Lloyd Elliott, attorney for the surety company, concerning the losses under the bond in question. The record further reveals that as various claims were presented to the surety company, after default of the principal, they were examined by Lloyd Elliott, as attorney for the surety company, who would usually telephone Sarah Daniels concerning the correctness of certain claims prior to issuance of drafts in payment thereof. On one occasion Sarah Daniels told Elliott that the principal was in her office and that she had talked with the principal and that certain claims were correct. Drafts were prepared by the surety company to pay such claims, but before sending them out, attorney Elliott asked Sarah Daniels to confirm his understanding as to the correctness of these claims. Thereafter, under date of June 9, 1960 attorney Elliott forwarded to Miss Daniels a letter, known as Exhibit 2, in which he said:

"We are today requesting drafts covering the following claims:

| | |
|---|---:|
| The Patent Scaffolding Company | $231.40 |
| Southwestern Glass & Paint Co. | 440.94 |
| Pratt & Lambert, Inc. | 5,250.16 |
| Pittsburgh Plate Glass Co. | 2,484.55 |
| Safway Scaffolds Co. | 120.10 |
| The Texas Company | 82.50 |

It is our understanding from our conversation with you that your clients have confirmed the correctness of these claims.

Will you be kind enough to confirm this by signing the attached copy of this letter and returning it to us?

Yours very truly,

LEE :gh
This will confirm the correctness of the above accounts.
/s/ Sarah Daniels
Attorney for Ona Daly Shaw"

When Exhibit 2 was offered in evidence objection was made thereto that same was a part and parcel of a settlement negotiation and therefore not admissible. Also, same was objected to because there was no showing of authority on the part of Miss Daniels to bind Mr. Shaw. Miss Daniels testified that the letter was signed by her after discussing certain settlement propositions with

attorney Elliott. Attorney Elliott denied that settlement negotiations were discussed. The court refused defendants' requested issue inquiring as to whether or not Exhibit 2 was a part and parcel of settlement negotiations.

There was no denial of the capacity in which appellants were sued as provided by Rule 93, Texas Rules of Civil Procedure. The evidence is conclusive that Z. George Shaw was a partner with his wife, Ona Daly Shaw, and therefore the actions and conduct of his partner would bind him. 32 Tex.Jur., Partnership, Sec. 79.

Neither do we think there is any substance in appellants' contention that the letter was inadmissible, being a part and parcel of a compromise and settlement agreement. It is to be observed that there is nothing whatsoever in the letter itself to indicate a compromise and settlement agreement. It is nothing more than a request on the part of the attorney for the surety company to the attorney for the partners to verify the correctness of certain accounts. While it is true that there was conflicting evidence concerning certain compromise negotiations, yet the law is plain that if a statement forming a part of or connected with an offer of a compromise is an admission of an independent fact pertinent to the question in issue, evidence of such statement is admissible. 80 A.L.R. 919; International & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S.W. 515; Alling v. Vander Stucken, 194 S.W. 443, Tex.Civ.App. err. ref.; Farmers State Bank & Trust Co. v. Gorman Home Refinery, Tex.Com.App., 3 S.W.2d 65; Sanford v. John Finnigan Co., Tex.Civ.App. err. ref., 169 S.W. 624.

We believe that the exhibit clearly demonstrates an admission by an attorney binding upon appellants. Such admissions contained in the exhibit do not merely raise fact issues, but are conclusive upon the parties. Texas & P. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652.

Should we be mistaken in holding that Exhibit 2 was admissible in evidence, yet such error, if any, was harmless in that the record does not demonstrate that such evidence resulted in an improper verdict or judgment. Rule 434, T.R.C.P. Moreover, there is ample evidence in this record, aside from Exhibit 2, to support the verdict and the judgment. Appellants' Points 1 through 3 are overruled.

In their Point 4, appellants contend that the court erred in admitting into evidence the various vouchers and invoices in support of appellee's claim, on the ground that such were hearsay and not admissible as business records. The record reveals that the various invoices introduced into evidence were of claims made against Bill Barnett & Associates for materials furnished prior to the date of default. Such invoices were a part of the surety company's files at the time it issued drafts in payment thereof. The testimony that such written instruments were in the appellee's files at the time it issued drafts in payment thereof was admissible to show the reason for payment. It must be remembered that the application for the bond, made by appellants to secure the issuance of the bond, provides that the vouchers or other evidence of any payment made in good faith by the company arising out of or in connection with the bond shall be taken as conclusive evidence of the extent of liability of the indemnitors. We find nothing wrong with this agreement. All of the parties herein are *sui juris* and therefore they lawfully made the agreement and, having done so, they are bound by the terms thereof. While the record does demonstrate some discussion concerning the business records statute, we do not believe that the court was restricted in admitting these exhibits to such Act. Under the terms of the specific agreement made by the parties, such exhibits were made admissible by the parties themselves. Fidelity & Casualty Co. of N. Y. v. Harrison, Tex.Civ.App., 274 S.W. 1002, wr. ref. Appellants' fourth point is overruled.

**558**

In their last three points of error, 5 through 7 inclusive, appellants insist that since appellee failed to offer any proof of payment in good faith, or the reasonableness of the amount paid, that there was no evidence, or insufficient evidence, to sustain the verdict of the jury. Appellee urges that we should not consider these points because they are not germane to assignments in the motion for new trial. While it is true that these points of error are vague and general in nature, yet they are sufficiently germane, and since the verdict of the jury consists of only one special issue, we have concluded to consider such points. Parrish v. Hunt, 160 Tex. 378, 331 S.W.2d 304; Texas Employers Ins. Ass'n v. Hawkins, Tex. Supreme Ct., 369 S.W.2d 305.

These points have required us to consider and weigh all of the evidence in this case in accordance with the rule announced in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. Having done so, we are convinced that the verdict of the jury in this case is supported by evidence and is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Without repeating what we have heretofore said, reference to the application for the bond itself, and specifically Paragraph XIV thereof, expressly provides that the vouchers or other evidence of any payment made in good faith by the company shall be taken as conclusive evidence of the liability of the indemnitors. Therefore, the vouchers introduced in evidence prove the claim of the surety company, as a matter of law. The vouchers supporting appellee's claim are in evidence and constitute adequate support for the verdict and judgment.

Appellants, in their answer, admitted the execution of the application and bond and then filed a general denial. No special defense was pleaded in bar of appellee's claim. There were no allegations of fraud or lack of good faith. Contrary to appellants' contention, it was not incumbent upon appellee to introduce evidence of good faith in the payment of the various invoices presented to it. The law indulges a presumption that business affairs will be conducted in good faith. 23 Tex.Jur.2d 126, Sec. 83; 20 Am.Jur. 223, Sec. 229; 31 C.J.S. Evidence 126, pp. 745–746; Fidelity & Casualty Co. of N. Y. v. Harrison, Tex.Civ. App., 274 S.W. 1002, wr. ref. Of course, as in other cases of presumptions, such is rebuttable and we find appellants introducing some testimony seeking to demonstrate that appellee paid the amounts of the vouchers without investigation as to the fairness and adequacy thereof. But all of these matters were submitted to the jury which found that the amounts were paid by appellee in good faith, thus deciding the issue against appellants' contention. We cannot say that this finding is supported by no evidence or that it is insufficient. Appellants' Points 5 through 7 inclusive are overruled.

The judgment of the trial court is affirmed.

Affirmed.

BATEMAN, J., not sitting.